UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE CINCINNATI CASUALTY COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>INDUSTRIAL VENTILATION, INC., an Idaho Corporation, and LIBERTY NORTHWEST MUTUAL INSURANCE COMPANY, an Oregon corporation,<br><br>    Defendants. | Case No. 1:17-cv-00205-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Pending before the Court is Plaintiff's Motion for Partial Summary Judgment (Dkt. 33). The motion is fully briefed, and the Court heard oral argument on May 25, 2018. For the reasons stated below, the Court denied Plaintiff's Motion.

## BACKGROUND

In January 2014, the Flying A Ranch hired Industrial Ventilation, Inc. ("IVI") to treat a crop of potatoes to prevent sprouting. *Pl.'s Statement of Undisputed Facts* ¶ 1, Dkt. 33-2 ("Pl.'s SOF"). The potatoes were stored in a storage facility. *Id*. Flying A Ranch was insured against the risk of loss or damage to the storage facility and the stored potatoes by Liberty Northwest Insurance Corporation ("Liberty"). *Id*. ¶ 8.

IVI treated the stored crop of potatoes by spraying them with a sprout-inhibiting chemical. *Id.* ¶ 2. A fire broke out while IVI was spraying the potatoes, damaging the

storage facility and the stored crop of potatoes. *Id.* At the time of the fire, IVI carried a Commercial General Liability policy through Cincinnati Insurance Company. *Id.* ¶ 4-5 ("the Policy"). The Policy covers "property damage" for which the insured becomes legally obligated. *Id.* ¶ 5. The Policy contains an exclusion, however, for "property damage [to] that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." *Id* (the "j.(6) exclusion").

On September 8, 2016, Liberty filed a lawsuit against IVI in the Seventh Judicial District of the State of Idaho, seeking to recover the amounts it paid out to Flying A Ranch to cover the costs of property and related damages due to the fire. *See Compl.* Ex. B, Dkt. 1-2. These costs included the costs of the stored potatoes, which were damaged by the fire. *Id*. Liberty alleged that the fire was the result of IVI having "negligently and carelessly delivered dormancy-enhancing and sprout-inhibiting agricultural chemicals" into the storage facility's ventilation system. *Id.* ¶ 16-20, 22. Cincinnati is defending IVI in the underlying state action, subject to a reservation of rights. *Pl.'s SOF* ¶ 10, Dkt. 33-2.

On May 10, 2017, Cincinnati filed this action seeking declaratory judgment that it has no duty to indemnify IVI for the cost of any damage to the potatoes. *Id.* ¶ 11 (seeking a declaration that "the Policy excludes coverage for the damage to, or replacement cost of" the lot of seed potatoes damaged in the fire, pursuant to the j.(6) exclusion).[1] IVI and Liberty dispute, as a matter of law, that the exclusion applies, on the grounds that the

---

[1] Cincinnati does not dispute that the Policy covers IVI's liability for damage to the storage facility, or other damages due to the fire. *Pl.'s SOF* ¶ 11, Dkt. 33-2.

treatment of the potatoes with sprout inhibiting chemicals was not performed "incorrectly." *See IVI's Statement of Disputed Facts* ¶ 6-7, Dkt. 63 ("IVI's SOF") ("There is no evidence that IVI performed its work in a 'faulty' manner"); *Liberty's Statement of Undisputed Facts*, ¶ 14, Dkt. 56 ("Liberty's SOF") (suggesting that the fire was caused by "an accidental ignition, "not by IVI's incorrect treatment of the potatoes).

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255.

## ANALYSIS

The underlying action alleges that IVI's negligence caused a fire which damaged the seed potatoes. *See Compl.* Ex. B, Dkt. 1-2. Cincinnati's duty to indemnify IVI rests on whether the damage to the potatoes is covered by the Policy. *Deluna v. State Farm Fire and Cas. Co.*, 233 P.3d 12, 16 (Idaho 2008) ("the duty to indemnify is triggered . . . where an insurance company would be obligated to pay the underlying action"). "In construing an insurance policy, the Court must look to the plain meaning of the words to determine if there are any ambiguities." *Cascade Auto Glass, Inc. v. Idaho Farm Bureau*

*Ins. Co.*, 115 P.3d 751, 754 (Idaho 2005). "If the Court finds any ambiguities in the insurance policy, they must be construed against the insurer." *Id.* "The burden is on the insurer to use clear and precise language if it wishes to restrict the scope of coverage and exclusions not stated with specificity will not be presumed or inferred." *Clark v. Prudential Property and Cas. Ins. Co.*, 66 P.3d 242, 245 (Idaho 2003).

The j.(6) exclusion bars coverage for "property damage [to] that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." *Pl.'s SOF* ¶ 5. The parties offer two alternative interpretations for when "work" is "incorrectly performed" on the "particular part." Cincinnati alleges that the exclusion applies to any claim for damages to the particular part that arises during the course of performing the work. In other words, Cincinnati argues that because IVI was hired to perform work on the potatoes, if damage occurs to the potatoes then the work was "incorrectly" performed.

Defendants argue, however, that the j.(6) exclusion applies only to losses resulting from a failure to perform the work on the particular part in a workmanlike manner. Under this interpretation, the j.(6) exclusion does not relate to damages caused by intervening negligent acts by the insured. Instead, it serves to prevent the insurance company from being responsible for consequential damages resulting from a failure to perform a job in a workmanlike manner. In other words, Defendants argue that the j.(6) exclusion operates to differentiate general liability coverage from professional liability coverage. Under this

interpretation, the j.(6) exclusion would not apply to damage to the potatoes unless it resulted from the anti-sprout treatment itself, rather than an intervening cause.[2]

The Court finds that both interpretations is plausible, but that Plaintiff's interpretation is excessively broad, while the Defendants' interpretation is the more reasonable reading of the j.(6) exclusion. At a minimum, the language is ambiguous and, as such, must be construed in favor of coverage. *Cascade Auto Glass, Inc.*, 115 P.3d at 754. This is particularly true because the language at issue seeks to exclude coverage, and the insurance company is under a duty to clearly and explicitly define the damages excluded. *Clark*, 66 P.3d at 245. The Court finds as a matter of law that the j.(6) exclusion does not apply to the damages to the potatoes, and will deny Plaintiff's motion.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Partial Motion for Summary Judgment (Dkt. 33) is **DENIED**.

DATED: July 2, 2018

_____
B. Lynn Winmill
Chief U.S. District Court Judge

---

[2] *Cf. Allstate Ins. Co. v. Smith*, 929 F.2d 447 (1991). In *Allstate*, the Ninth Circuit determined that a "faulty workmanship" clause could be interpreted to cover both "faulty processes" and "faulty products." Because the Court was required by state law to resolve ambiguities in the policy in favor of the insured, it declined to apply the exclusion to damages caused by a flawed "process" rather than due to a flawed "product." The interpretation advanced here by the Defendants is analogous, in that the damages did not result from a flaw in the anti-sprout treatment, but rather due to a flaw in the process of delivering the treatment.